IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH A CERTAIN FACEBOOK ACCOUNT THAT IS STORED AT PREMISES CONTROLLED BY FACEBOOK INC. | Case No. 1:20-mj-128<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Jeremey Winbush, Task Force Officer, Federal Bureau of Investigation, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant for information associated with a certain Facebook user ID: https://www.facebook.com/letmy.nutzang.5 (hereinafter referred to as the "Target Account") that is stored at premises owned, maintained, controlled, or operated by Facebook Inc. ("Facebook"), a social networking company headquartered in Menlo Park, California. The Target Account displays vanity/username: Troy Timmis and is believed to be utilized by Troy Kevin Timmis. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Facebook to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the user ID.

2. Your Affiant is a Task Force Officer of the Federal Bureau of Investigation (FBI), United States Department of Justice, and as such, is an investigative or law enforcement officer

within the meaning of Title 18, United States Code, Section 2510(7). Affiant is currently employed as an Investigator with the Chattanooga Police Department and has been so employed since January 2011. In July 2016, affiant was assigned to the Federal Bureau of Investigation (FBI) Safe Street Task Force (SSTF) Knoxville Division, Chattanooga Resident Agency. At which time I was assigned and deputized to investigate violent crime to include, but not limited to, bank robbery, narcotics trafficking, violent crime, and other federal crimes not listed. Affiant has had specialized training and has been involved in numerous investigations involving violent crimes and criminal activities with respect to federal violations.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

2. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe violations of Title 18, United States Code, Section 875(c) have been committed, are being committed, or will be committed by Troy Kevin **TIMMIS**. There is also probable cause to believe the Facebook account identified in Attachment A contains evidence of violations of, among other crimes, of Title 18, United States Code, Section 875(c). Accordingly, there is probable cause to search the information and items described in Attachment A as described in Attachment B.

4. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

5. On September 1, 2020, the Federal Bureau of Investigation (FBI) Chattanooga Resident Agency, the Chattanooga Police Department (CPD), and the Hamilton County Sheriff's Office (HCSO) initiated an investigation into Troy Kevin **TIMMIS** for violation of 18 U.S. Code § 875(c) (interstate communications). The investigation has shown Troy Kevin **TIMMIS** is a member of the BLOODS, specifically the violent criminal street gang, Phive Duse (52) Blood Stone Villains (BSV) operating in Chattanooga, Tennessee.

6. On August 22, 2020, HSCO Deputy Jordan Long-Ross was involved in an on duty shooting incident in the Eastern District of Tennessee. Deputy Long-Ross utilized his service weapon and injured a subject during this incident. To your affiant's knowledge, TIMMIS was not a party to or involved in the incident in anyway.

7. On August 24, 2020, WDEF (Chattanooga) News 12 Now, posted a news article highlighting the aforementioned shooting incident on their website (https://wdef.com/2020/08/24/deputy-long-ross-shoots-suspect/) and Facebook profile (https://www.facebook.com/wdefnews12/).



## Deputy Long-Ross once again shoots suspect

By Collins Parker - August 24, 2020

**OFFICER INVOLVED SHOOTING**

DEPUTY JORDAN LONG-ROSS

CHATTANOOGA (WDEF) – The Hamilton County Sheriff's has placed deputy Jordan Long-Ross on administrative leave following the shooting of a suspect after a chase over the weekend.



8. On August 25, 2020, the Hamilton County Sheriff's Office received notification from an unknown concerned citizen that a Facebook user account had posted communication containing a threat to retaliate against Deputy Jordan Long-Ross for his involvement in the aforementioned shooting incident. The communication posted by Facebook user account, "Troy Timmis", stated *"Kill this pig mfkr if you see him b4 he try's to take your life! If you got it on you use it! They're gonna use theirs on you"*. [1] Attached to this communication was the news article

---

[1] Your affiant reviewed publicly displayed photographs on the page, and they depict/show who I know to be Troy Kevin TIMIMIS.

Page **5** of **14**

previously posted WDEF (Chattanooga) News 12 Now on August 24, 2020, which included Deputy Jordan Long-Ross' name and photo (in uniform).



9. Your Affiant knows based on training and experience, as well as, debriefings with multiple Confidential Human Sources ("CHS") during other investigations that "pig" is a derogatory slang terminology used to identify law enforcement officials, specifically uniformed deputies and/or police. Your Affiant also knows based on training and experience, as well as,

debriefings with multiple CHS' during other investigations that "If you got it on you use it!" means to discharge a firearm if you own or possess one, specifically in this context towards law enforcement.

10. On September 1, 2020, an Interstate Identification Index (III) and local criminal history inquiry, revealed **TIMMIS** to be a multi-convicted felon. **TIMMIS** has a history of arrest(s) and convictions for violent crimes to include but not limited to aggravated burglary, aggravated robbery and possession of a firearm during a dangerous felony, aggravated stalking, and attempted retaliation against judge, juror, or officer.

### FACEBOOK, INC.

11. Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com. Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

12. Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter. This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers (for password retrieval), physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a user identification number to each account.

13. Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request"

accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

14. Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook. Depending on the user's privacy settings, Facebook may also obtain and store the physical location of the user's device(s) as they interact with the Facebook service on those device(s).

15. Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

Page **8** of **14**

Case 1:20-mj-00128-CHS   Document 6   Filed 09/08/20   Page 8 of 19   PageID #: 20

16. Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video. It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

17. Facebook users can exchange private messages on Facebook with other users using Facebook Messenger. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. These chat communications are stored in the chat history for the account. Facebook also has a Video Calling feature, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

18. If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

19. Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (i.e., non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

20. Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

21. Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes

Page **9** of **14**

Case 1:20-mj-00128-CHS   Document 6   Filed 09/08/20   Page 9 of 19   PageID #: 21

stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

22. Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

23. Facebook users can exchange private messages on Facebook Messenger with other users. These messages, which are similar to e-mail messages, are sent to the recipient's "Inbox" on Facebook, which also stores copies of messages sent by the recipient, as well as other information. There is also a separate application, Facebook Messenger, where users can send and receive private and group messages. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. In addition, Facebook has a Chat feature that allows users to send and receive instant messages through Facebook. These chat communications are stored in the chat history for the account. Facebook also has a Video Calling feature, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

24. Facebook Notes is a blogging feature available to Facebook users, and it enables users to write and post notes or personal web logs ("blogs"), or to import their blogs from other services, such as Xanga, LiveJournal, and Blogger.

25. The Facebook Gifts feature allows users to send virtual "gifts" to their friends that appear as icons on the recipient's profile page. Gifts cost money to purchase, and a personalized message can be attached to each gift. Facebook users can also send each other "pokes," which are free and simply result in a notification to the recipient that he or she has been "poked" by the sender.

Page **10** of **14**

Case 1:20-mj-00128-CHS Document 6 Filed 09/08/20 Page 10 of 19 PageID #: 22

26. Some Facebook pages are affiliated with groups of users, rather than one individual user. Membership in the group is monitored and regulated by the administrator or head of the group, who can invite new members and reject or accept requests by users to enter. Facebook can identify all users who are currently registered to a particular group and can identify the administrator and/or creator of the group. Facebook uses the term "Group Contact Info" to describe the contact information for the group's creator and/or administrator, as well as a PDF of the current status of the group profile page.

27. Facebook uses the term "Neoprint" to describe an expanded view of a given user profile. The "Neoprint" for a given user can include the following information from the user's profile: profile contact information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications.

28. In addition to the applications described above, Facebook also provides its users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

29. Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address. These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action. For example, if a user views a Facebook profile,

that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

30. Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

31. As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, IP log, stored electronic communications, and other data retained by Facebook, can indicate who has used or controlled the Facebook account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Facebook logs the IP addresses from which users access their accounts along with the time and date. By

determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, Facebook builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

32. Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, other account information and prospective location information.

### INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

33. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

34. Based on the foregoing, I request that the Court issue the proposed search warrant.

35. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving it on Facebook. Because the warrant will be served on Facebook, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

36. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

## REQUEST FOR SEALING

37. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed for 180 days. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

_____
Jeremy Winbush
Task Force Officer
Federal Bureau of Investigation

Subscribed and sworn to before me on _____September 8_____, 2020

_____
HON. CHRISTOPHER H. STEGER
UNITED STATES MAGISTRATE JUDGE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH A CERTAIN FACEBOOK ACCOUNT THAT IS STORED AT PREMISES CONTROLLED BY FACEBOOK INC. | Case No. 1:20-mj-128<br><br>**Filed Under Seal** |

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the following Facebook account hosted by Facebook Inc., 1601 Willow Road, Menlo Park, California, USA.

- USER ID: https://www.facebook.com/letmy.nutzang.5

- Username/Vanity Name: Troy Timmis

- Believed User: Troy Kevin TIMMIS

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH A CERTAIN FACEBOOK ACCOUNT THAT IS STORED AT PREMISES CONTROLLED BY FACEBOOK INC. | Case No. 1:20-mj-128<br><br>**Filed Under Seal** |

## ATTACHMENT B

### Particular Things to be Seized

**I.     Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook Inc. ("Facebook"), including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), for the period of August 1, 2020 to Present, Facebook is required to disclose the following information to the government for each of the Facebook accounts described in Attachment A:

(a) All contact and personal identifying information, including: full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b) All activity logs for the account and all other documents showing the user's posts and other Facebook activities;

(c) All photos uploaded by that user ID and all photos uploaded by any user that have that user tagged in them;

Page **1** of **4**

(d) All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e) All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending "Friend" requests;

(f) All "check ins," location history, and other location information;

(g) All IP logs, including all records of the IP addresses that logged into the account;

(h) All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(i) All information about the Facebook pages that the account is or was a "fan" of;

(j) All past and present lists of friends created by the account;

(k) All records of Facebook searches performed by the account;

(l) All information about the user's access and use of Facebook Marketplace;

(m) The types of service utilized by the user, the length of service (including start date), the types of service utilized by the user, and the means and source of any payments associated with the service (including any credit card or bank account number);

(n) All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(o) All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

## II. Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violation of 18 U.S.C. § 875(c) (Interstate communications) have been committed, are being committed, and will be committed by Troy Kevin TIMMIS since August 1, 2020, including , for each user ID identified on Attachment A, information pertaining to the following matters:

(a) The transmission in interstate or foreign commerce of communication containing a threat(s) to kidnap a person(s) or a threat(s) to injure the person of another

(b) Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

(c) Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

(d) The identity of the person(s) who created or used the user ID, Including records that help reveal the whereabouts of such person(s).

Page 3 of 4

Case 1:20-mj-00128-CHS   Document 6   Filed 09/08/20   Page 18 of 19   PageID #: 30

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.